IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| REGINALD DALE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 08-CV-3200 |
| | ) | |
| ALEX GILLESPIE, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION

BYRON G. CUDMORE, U.S. MAGISTRATE JUDGE:

This matter comes before the Court on Defendants Alex Gillespie, Aaron Conard, Bill Smith, Brad Martin, and the Sangamon County Sheriff's Office's Motion for Summary Judgment (d/e 36) (Motion). The case involves an altercation at the Sangamon County, Illinois, Jail (Jail) on September 23, 2006. Defendants Gillespie, Conard, and Martin were correctional officers at the Jail. Defendant Smith was a Sergeant on duty at the time. Plaintiff Reginald Dale was a detainee at the Jail on that date. Dale alleges that the Defendants violated his rights by using excessive force against him. The parties consented, pursuant to 28 U.S.C. § 636(c), to have this matter proceed before this Court. Consent to Proceed Before a United States Magistrate Judge, and Order of Reference (d/e 34). The Defendants now ask for summary judgment. For the reasons set forth

below, the Sangamon County Sheriff's Office is entitled to summary judgment, but issues of fact remain with respect to the other Defendants. The Motion is, therefore, allowed in part and denied in part.

STATEMENT OF FACTS

For purposes of the Motion, the Court must look at the evidence in the light most favorable to Dale. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). The Court, therefore, will recite the facts adduced by viewing the evidence in that manner. The Court makes this recitation for the limited purpose of resolving the Motion. The Court recognizes that the Defendants vigorously dispute much of the evidence presented by Dale, and the Court is not reciting the facts or making any findings for any purpose other than resolving the Motion.

On September 23, 2006, at approximately 3:33 a.m., Dale was booked into the Jail on a warrant for resisting or obstructing a peace officer. By 4:30 a.m., Dale was placed in holding Cell I-10 (Cell) in the booking area of the Jail. Several detainees were in the Cell. All of the other detainees were asleep except a man named Aaron Dickerson. Plaintiff's Response to Motion for Summary Judgment (d/e 42), attached Affidavit of Aaron Dickerson. Defendants Gillespie, Conard, and Martin were the correctional officers on duty in the booking area at that time.

At about 4:30 a.m., Dale was attempting to use the telephone in the Cell to call someone to make his bail, but the phone was not working. Dale asked the Defendant correctional officers to turn on the phone so he could make a call. Dale states that Defendant Gillespie started to use abusive language and curse words. Memorandum, Exhibit 7, Deposition of Reginald Dale, at 19, 54-55. Dale approached the door to the Cell and started talking back to Gillespie with similarly abusive language. At one point, Gillespie asked Dale whether he was threatening Gillespie. Dale told Gillespie that he "could take it any way he wants to take it." Dale Deposition, at 17, 20, 54. During the conversation, Gillespie told Dale to be quiet and to step away from the door. Dale Deposition, at 33. Dale refused to comply with the orders. Dale Deposition, at 34.

At approximately 4:43 a.m., Gillespie told one of the other Defendant Correctional Officers to push the button at the desk to open the door to the Cell. The officer did so and opened the door. Gillespie then lunged at Dale, grabbed him by the throat and started choking him and forcing him to the back of the Cell. Dale Deposition, at 30-31. The door closed behind Gillespie as he entered. Conard and Martin then reopened the door and entered the Cell. The three officers then beat and choked Dale, and shot him repeatedly with Tasers. Dale Deposition, at 17-18, 36-39, 46. The officers threatened Dale and used racial slurs. Dale Deposition, at 17-18.

Dale is an African American; Defendants Gillespie, Conard, and Martin are Caucasians. Dale attempted to fend off the attackers but was unable to do so. Dale Deposition, at 32, 37-39. Dale stated that Gillespie and Conard were the primary attackers, but Martin was present and participated. After beating, choking and tasing, Defendants Gillespie, Conard, and Martin walked Dale out of the Cell and placed him in a different holding cell.

The Defendants submitted a video of the incident shot by a security camera in the Jail. The security camera view shows the booking desk, a portion of hallway in front of the booking desk, and the door to the Cell opposite the booking desk. The camera did not record anything that happened inside of the Cell. The time stamp on the video shows that the camera took one frame per second when there was some motion in the camera's view. The video has no sound.

According to the video, Gillespie went to the door of the Cell at 4:43:10.[1] He said something to the officer behind the desk when he reached the door to the Cell. The Cell door opened. A man, Dale, can be seen standing in the doorway next to the door. At 4:43:18, Gillespie raised his arms toward Dale's upper chest or throat and seemed to push Dale back into the Cell. The door shut behind Gillespie. At 4:43:26, Conard and

---

[1] The time from the video was recorded in hours, minutes, and seconds. Thus, 4:43:10 is 4:43 a.m. and ten seconds.

Martin went into the Cell. At 4:43:54, Sgt. Smith entered the Cell. From 4:44:00 to 4:44:10, Sgt. Smith came out of the Cell, walked to the Desk, handed something to the person at the desk, and then went back into the Cell. At 4:44:55, Defendants Gillespie, Conard, and Martin walked Dale out of the Cell and down the hall out of the view of the camera. Sgt. Smith followed them out of the Cell and shut the door. Dale was not resisting as the Defendants walked him down the hallway.[2]

Dale was charged with battery. On October 23, 2009, Dale pleaded guilty to the charge of battery, a misdemeanor, in a negotiated plea. The charging document alleged that Dale committed battery when he "knowingly made contact of an insulting and provoking nature to A. Gillespie, in that said defendant struck A. Gillespie in the face with his hand." <u>Memorandum</u>, Exhibit 9, <u>Copy of Charge for Count II of II</u>. At the plea hearing, the judge and the prosecutor, Mr. Magnuson, had the following colloquy with Dale:

> THE COURT: . . . .
> The nature of the charge is you knowingly made contact of an insulting and provoking nature to A. Gillespie, in that you struck A. Gillespie with your hand in violation of the law. Do you understand that?
>
> MR. DALE: Yes.

---

[2]Dale claims that the video shows Sgt. Smith hand a Taser to one of the other Defendants. The video does not show Sgt. Smith hand anything to any of the other Defendants.

> THE COURT: That is a Class A Misdemeanor. What are the terms?
>
> MR. MAGNUSON: In return for a plea of guilty, the People would nolle pros, dismiss, Count I and accept a recommended sentence of seven days in the County Jail having been served at this point in time.
>
> THE COURT: Straight conviction?
>
> MR. MAGNUSON: Yes.
>
> THE COURT: Mr. Dale, did you hear what Mr. Magnuson said?
>
> MR. DALE: Yes, Your Honor.
>
> THE COURT: Do you agree with those terms?
>
> MR. DALE: Yes, Your Honor.
>
> THE COURT: All right, knowing the nature of the charge against you, how do you plead to the charge of Battery?
>
> MR. DALE: Guilty.
>
> THE COURT: I will accept the plea. You're sentenced to seven days in Sangamon County Jail. I'll give you credit time served, so you don't have to serve any more time. There will be a straight conviction entered. Count I dismissed per plea. . . .

<u>Memorandum</u>, Exhibit 8, <u>Transcript of Plea Hearing</u>.[3]

---

[3] The evidence does not indicate the nature of the charge in Count I that was dismissed pursuant to the plea agreement. The Court takes judicial notice that the docket number of the criminal case contained the letters "CF" which indicate a felony charge in Illinois state court.

ANALYSIS

Defendants now move for summary judgment. At summary judgment, the Defendants must present evidence that demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). The Court must consider the evidence presented in the light most favorable to Dale. Any doubt as to the existence of a genuine issue for trial must be resolved against the Defendants. Anderson, 477 U.S. at 255. Once the Defendants have met their burden, Dale must present evidence to show that issues of fact remain with respect to an issue essential to his case, and on which he will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. at 322; Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In this case, the factual disputes preclude summary judgment against all Defendants other than the Sangamon County Sheriff's Office.

Excessive force claims for pretrial detainees are analyzed under the Due Process Clause of the Fourteenth Amendment. Lewis v. Downey, 581 F.3d 467, 473-74 (7th Cir. 2009). Pretrial detainees are entitled to be free from all punishment prior to trial. This protection for pretrial detainees is broader than the protection afforded convicted prisoners. Convicted prisoners may be punished for their crimes, but may not be subject to cruel and unusual punishment. Id. To establish a claim, Dale must present

evidence that the Defendants acted deliberately or with callous indifference, evidenced by an actual intent to violate his rights or reckless disregard for his rights. Wilson v. Williams, 83 F.3d 870, 875 (7th Cir. 1996). In the context of excessive force, a pretrial detainee, such as Dale, must present evidence of:

> (1) some harm, that
>
> (2) resulted directly and only from the use of force that was clearly excessive to the need; and the excessiveness of which was
>
> (3) objectively unreasonable in light of the facts and circumstances of the time.

Id., at 876.[4]

Dale has met his burden when the evidence is viewed favorably to him. Gillespie started the altercation by cursing and using abusing language. Dale admits he responded to Gillespie's curses with curses. Dale also admits that he did not follow Gillespie's instruction to step away from the door or to be quiet. In response to these infractions, Gillespie lunged at Dale, choking, beating, and tasing him. Conard and Martin joined in the assault. Sgt. Smith arrived at the scene within 30 seconds, went in, and watched the beating for about a minute. A jury could conclude

---

[4]The Defendants refer extensively to the Eighth Amendment standards for cruel and unusual punishment. This is incorrect. The standard set forth in Wilson v. Williams in the correct standard in this case.

that the choking, beating, and tasing was clearly an excessive and objectively unreasonable response to Dale's verbal retorts and his failure to obey an order to step away from the door. A jury could also conclude that the beating, choking, and tasing harmed Dale. Dale has presented sufficient evidence to demonstrate that issues of material fact exist.

It is true that Dale pleaded guilty to committing a battery on Gillespie by striking him in the face once during the altercation. The video recording of the incident, however, shows that Gillespie lunged at Dale first as soon as the door to the Cell opened, and within six seconds, Conard and Martin joined in. Thus, the evidence when viewed favorably to Dale, shows that the Defendants used excessive force first, before Dale committed the battery, rather than in response to the battery. If so, the use of force was still excessive in violation of Dale's rights to Due Process.

The video also shows that Sgt. Smith arrived on the scene less than thirty seconds before the beating began. Sgt. Smith was in the Cell about a minute during the beating. Dale testified that Sgt. Smith was there, but did not stop the beating. Dale Deposition, at 43-44. An officer who is present at the scene and who fails to take reasonable steps to protect the victim from another officer's use of excessive force can be held liable. Thompson v. Boggs, 33 F.3d 847, 857 (7th Cir. 1994). Thus, if Smith stood by and watched as Gillespie, Conard, and Martin beat and choked and

tased Dale, he too would be liable.[5]

The Defendants vigorously dispute Dale's version of the facts. This dispute, however, only establishes that issues of fact remain for trial with respect to the four individual Defendants. See Frizzell v. Szabo, 2010 WL 1253987, at *3 (C.D.Ill. 2010).

The Sangamon County Sheriff's Office, however, is entitled to summary judgment. The Sangamon County Sheriff's Office can only be held liable under § 1983 if the employees acted pursuant to an express policy or a widespread practice that is so permanent and well-settled that it constitutes a custom or practice; or if the person who committed the constitutional violation had final decision making authority for the municipality. Estate of Sims ex rel. Sims v. County of Bureau, 506 F.3d 509, 515 (7th Cir. 2007). Dale presents no evidence that the four individual Defendants acted pursuant to any such custom or practice. Dale presents no evidence that any of the four individual Defendants had final decision making authority for the Sheriff's Department. The Sangamon County Sheriff's Department is, therefore, entitled to summary judgment.

---

[5]Dale indicates that Martin was not as significantly involved in the beating as Gillespie and Conard. Dale Deposition, at 42. Even so, he could be held liable under the principles set forth in Thompson.

The four individual Defendants also argue that they are entitled to qualified immunity. The individual Defendants are entitled to qualified immunity unless Dale can point to clearly established constitutional law existing at the time of the incident that put the individual Defendants on notice that their conduct was unconstitutional. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Dale can show that the individual Defendants' actions were unconstitutional in light of clearly established controlling authority by:

> (1) pointing to a closely analogous case that established a right to be free from the type of force that police officers used on him, or (2) showing that the force was so plainly excessive that, as an objective matter, the police officers would have been on notice that they were violating the Fourth Amendment.

Chelios v. Heavener, 520 F.3d 678, 691 (7th Cir. 2008) (quoting Clash v. Beatty, 77 F.3d 1045, 1048 (7th Cir. 1996).

In this case, if Dale is to be believed, the force was so clearly excessive that Gillespie, Conard, and Martin would have known that they were violating Dale's rights. Dale was unarmed, locked in the Cell. All he wanted was to make a phone call. Gillespie started the oral altercation, and then the three officers beat, choked, and tased Dale because he would not put up with Gillespie's verbal abuse. Sgt. Smith came by and watched. He was also on notice that he would be liable if he stood by and let the excessive force continue. Thompson v. Boggs, 33 F.3d at 857. The fact

that the Defendants dispute Dale's version of the events, again, only shows that the matter must go to trial.

WHEREFORE, Defendants' Motion for Summary Judgment (d/e 36) is ALLOWED in part and DENIED in part.  Summary judgment is entered in favor of Defendant Sangamon County Sheriff's Office and against Plaintiff Reginald Dale.  Defendant Sangamon County Sheriff's Office is dismissed as a party to this case.  The remainder of the Motion is DENIED.  A telephone conference is scheduled Thursday, March 31, 2011, at 2:00 p.m. to establish final pretrial and jury trial settings.  The Court will commence the telephone conference.

ENTER: March 18, 2011

       *s/ Byron G. Cudmore*
BYRON G. CUDMORE
UNITED STATES MAGISTRATE JUDGE